GEORGE W. MACRAE ET AL. *v.* PERRIN H. LOWREY ET AL.

1. WILLS. *Devise of land. After acquired property. Hutchinson's Code,*
   *p.* 649, sec. 14; *Code* 1857, *p.* 432, *art.* 34; *Code* 1871, § 2388; *Code*
   1880, § 1262; *Code* 1892, § 4488.

   Under the statutes, Hutchinson's Code, p. 649, sec. 14; code 1857,
   p. 432, art. 34; code 1871, § 2388; code 1880, § 1262; code 1892, § 4488,
   so providing, a testator may devise lands acquired after the exe-
   cution of his will.

2. SAME. *General description.*

   A will devising real estate by a specific name (*i. e.,* "the Cunning-
   ham place in Tunica county") invests the devisee with the testa-
   tor's title to the lands so named at the time of his death, although
   only a part of the lands was so named at the date of the will, and
   the addition, falling under the designation, was acquired by the
   testator after said date.

FROM the chancery court of Quitman county.

HON. A. McC. KIMBROUGH, Chancellor.

Lowrey and another, appellees, were complainants in the
court below; Macrae and others, appellants, were defendants
there.

Appellees filed their bill in this case in the chancery court,
claiming that they were the owners by purchase from George
W. Jamison of an undivided one-third interest in certain lands
now in Quitman, but before the formation of that county, in
Tunica county, and that defendants were claiming to be the
owners of the entire interest in all of said lands by a title
which was void and of no effect as to complainants, and casts
a cloud on their title. The prayer of the bill was that the title
of defendants be canceled as a cloud on complainants' title, and
that complainants' title to a one-third interest in the land be
quieted and established. The defendants answered, claiming

title through William T. and Alfred H. Jamison, and denying that William E. Jamison, the father of George W., William T., and Alfred H. Jamison, ever had title, or was the owner of the lands at the time of his death. They also set up the statute of limitations of ten years, and estoppel of complainants to dispute their title. They made their answer a cross bill, and asked for the cancellation of complainants' deed as a cloud upon their title. The undisputed facts, so far as they are necessary to an understanding of the case, are as follows: In 1871 W. R. Cunningham sold to William E. Jamison and P. B. Cole, jointly, a large tract of land, including the land in controversy. He did not make them a joint deed, but they agreed on a partition of the property, and Cunningham made each a deed to the part which was allotted to him in said partition. The lands in controversy were deeded to Cole, and not to Jamison. This deed was made in 1872. In 1874 William E. Jamison filed a bill in the chancery court against the Levee Board (No. 1) to have canceled a claim of said board for the taxes for the year 1871 on all the lands purchased by him and Cole from Cunningham. This suit resulted in a decree fixing a lien on the lands for the taxes, and ordering the lands sold unless the taxes were paid by a day fixed. The taxes were not paid, and the commissioner sold the land under the decree, and it was purchased by one Waddell, July 8, 1875, and on the 19th day of the same month Waddell conveyed it by quitclaim deed to William E. Jamison. William E. Jamison died in October, 1875, leaving a will executed and dated April 3, 1872, the provisions of which are sufficiently set out in the opinion of the court. From a decree granting the relief prayed in the bill of complainants, defendants appealed.

*St. John Waddell,* for appellants.

The language of the will is as follows: "I give, devise and bequeath to my three sons, William T. Jamison, Alfred H. Jamison, and George W. Jamison, and to their heirs, all of

my lands lying in the county of Tunica, state of Mississippi, known as the Morris place and the Cunningham place, containing in the aggregate about ———— acres." . . .

This was a specific devise of specific property that the testator then owned at the time the will was written, and it was written and dated on April 3, 1872.

Ordinarily a will speaks from the date of the death of the testator, but in the case of specific devises, or devises of specific property, the will speaks as of the date it was written, so far as such devises are concerned; and in the case of a devise of specific property, parol evidence is admissible and competent to show the exact description and condition of the specific property devised, at the date the will was written. In other words, the property specifically devised is only the property owned by the testator at the date the will was written. Underhill on Wills, secs. 407 to 413, and 909 to 911.

Jamison's will contains the following clause, after disposing of specific property, to-wit:

"I also bequeath to my said wife, Margaret H. Jamison, the balance of my estate of whatever description, including the interest that may arise from the loan of the money that may be collected on my life policy," etc.

As to devises and bequests of this kind, the will speaks from the date of the death of the testator, which was in October, 1875, or after he had acquired whatever title he had to the lands in controversy, by virtue of the deed from V. B. Waddell. This being true, by the above clause in the will that title passed and became vested in Mrs. Margaret H. Jamison, the testator's widow, and she afterward, jointly with all of her other children, except George W., conveyed said lands to her two sons, William T. and Alfred H. Jamison. And William T. and Alfred H. Jamison afterward conveyed same by title bond to Isbell & Deaton, which was transferred by Isbell & Deaton to Sims, and by Sims to Porter & Macrae, the defendants.

This residuary clause in the will clearly carried with it

whatever lands the testator acquired between the date of the will and his death. Underhill on Wills, secs. 60, 61, 62, 63, and 64.

*P. H. Lowrey,* for appellees.

In this state, as in most of the other states, after-acquired lands can pass by will, and this being true, the same rule prevails in devises of land as in bequests of personalty, viz.: The will speaks from the death of the testator, and not from its date. 29 Am. & Eng. Enc. Law (1st ed.), 362, and note 3. And for a discussion of the identical question here, see Jarman on Wills (5th Am. ed.), 606, 607.

Argued orally by *St. John Waddell* for appellants.

Calhoon, J., delivered the opinion of the court.

The appellees claim title to a one-third interest in the land in controversy from George W. Jamison, while the appellants claim it from William T. Jamison and Alfred H. Jamison. These three men are brothers, and all sons of William E. Jamison, deceased. The rights of the parties are dependent on the legal construction of the will of their father, as applied to the facts. The first clause in this will of William E. Jamison contains the following words:

"I give, devise, and bequeath to my three sons, William T. Jamison, Alfred H. Jamison, and George W. Jamison, and to their heirs, all my lands lying in the county of Tunica, state of Mississippi, known as the 'Morris Place' and the 'Cunningham Place,' containing in the aggregate about —— acres, and one-half of the stock of cattle on said places, all of the hogs on said places, and all the mules on said places, except two of average value with the rest; all the plantation utensils on said places, together with all other property whatever on said places, of which I may be seized and possessed at the time of my death, except a certain mare, the only one on either of said places."

The will then proceeds to charge this benefaction with the payment of his debts and funeral expenses. The will then gives his wife, Margaret H. Jamison, the mother of these beneficiaries, and the mother of testator's other children, his home place, in Panola county, for life, remainder to other children, and "the balance of my estate of whatsoever description." This will was executed April 3, 1872. Now, a large body of land, including that in controversy, had been bought by the testator, together with one Cole, and was owned by the two in undivided moieties, and this whole tract had been pur- chased by these two from one Cunningham, so that Cole and the testator owned the Cunningham place. In this condition of the title, the two men agreed on a partition between them. The agreement was in parol, but the division was actually made, and the share of each set aside to him in severalty on February 29, 1872, a little more than one month before the day the will was made; and the share so allotted to the testator, William E. Jamison, did not include any of the lands in controversy. On December 21, 1872, after the will was executed, Cunningham executed to each a deed for his share as per the division they had made in parol. On July 19, 1875, the testator received a quitclaim conveyance of a tax title held by one V. B. Waddell covering that part of the old Cunningham tract, which is the land in dispute. It is plain that at the date of the will the testator was not the owner of that part of the Cunningham tract in litigation here, but that he was the owner of it, so far as these litigants are concerned, at the date of his death. The testimony as to what was regarded as the Cunningham place before the will and after the will conflicts, and we cannot properly disturb the chancellor's conclusion of the whole case on weighing this evidence. We are at last remitted to a decision on the law of the case as applied to the will on the undisputed facts hereinbefore set forth. Formerly one could not devise after-acquired lands. Now he can, and so wills devising lands are very nearly as much ambulatory as wills bequeathing

personalty always were under the construction of the courts. This change was made in England and the states of the Union by statutes expressly authorizing the devise of after-acquired lands. Code 1871, § 2388 (Hutch. Code, p. 649, §14). So, since the statutes, where generic terms in the description of lands are used, as here, it is construed to mean the land answering that description at the death of the testator, even where additions are made to it by him after the will. If he sold it, or, subsequently to his will, otherwise devised it, the first devisee, of course, lost it. If he added to it, the addition inured to the first devisee. Jarm. Wills (6th ed.), top page 320 *et seq.* (some of the citations precisely covering the case at bar); Hawk. Wills, 18; Schouler Wills, sec. 486; 1 Underh. Wills, secs. 21-62, and note 2; 29 Am. & Eng. Enc. Law (1st ed.), p. 363, note; *Wynne* v. *Wynne,* 23 Miss., 251 (57 Am. Dec., 139); *Wells* v. *Wells,* 35 Miss., 663. If the devise was of the Morris place, it seems to us additions to it would go; and so of the Cunningham place. We think that the phrase, "all my lands lying in the county of Tunica, state of Mississippi, known as the 'Morris Place' and the 'Cunningham Place,'" under the authorities, meant those places so known at the death of the testator, regardless of area.

Lot No. 7 is out of the case, as the bill was dismissed as to that. The Cole bond for title, even if it could cut any figure in the case, is out of it by the action of the court on appellants' objection. The settlement between the Jamison brothers referred to other lands. The claim by adverse possession and the claim by estoppel rested on the evidence, and the chancellor's conclusion must stand.

*Affirmed.*