CASE 62—ACTION BY W. B. PEPPER'S EXECUTOR AGAINST JOSEPH S. PEPPER AND OTHERS FOR A SETTLEMENT OF THE ESTATE AND CONSTRUCTION OF THE WILL OF THE TESTATOR.—MAY 7.

# Pepper's Exr., &c. v. Pepper's Admr., &c.

### APPEAL FROM FLEMING CIRCUIT COURT.

FROM A JUDGMENT CONSTRUING THE WILL BOTH PARTIES APPEAL. AFFIRMED ON PLAINTIFF'S APPEAL AND REVERSED ON THE CROSS APPEAL.

WILLS—CONSTRUCTION—LEGITIMATE HEIRS—LAND PURCHASED AFTER MAKING WILL—PARTNERSHIP—EVIDENCE.

1. At the time testator made his will he owned the D. farm, which was his home place, an adjoining tract of 100 acres, known as the "P. Farm," and another tract of ninety-five acres. Prior to his death he purchased a fourth tract, adjoining the D. farm, of 111 acres. The will devised to plaintiff's decedent the home

farm, known as the "D. Farm," and, after making certain specific bequests, provided that decedent was to have all the property bequeathed to him, except the home farm, which he should hold his natural lifetime, and at his death one-half thereof should be at his disposal to will as he saw fit. Testator devised the ninety-five acres to another brother, and provided that at his death such tract should revert to the testator's then living heirs. HELD, that the devise to decedent passed the D. farm only, and did not include the 111-acre tract subsequently purchased.

2. Where testator declared that at the death of his brothers, certain land conveyed to them should revert to his legitimate living heirs, such words were used in their literal sense, and applied to all the heirs of the testator at his death and at the death of the devisees.

3. Evidence reviewed, and *held* insufficient to establish a partnership between plaintiff's decedent and testator, so as to entitle deceased to a partner's share in land conveyed to testator, who took title thereto in his own name.

J. D. WYATT, W. G. DEARING AND JOHN P. McCARTNEY, ATTORNEYS FOR APPELLANT.

W. B. Pepper, a citizen of Fleming county, Kentucky, departed this life, having made and published his last will and testament, which was duly probated in the Fleming county court, February 22, 1897. Thereafter on the 12th day of August, 1899, Enoch S. Pepper, the executor under the will of said decedent, filed in the Fleming Circuit Court as such executor and individually, a suit for the construction of said will and the settlement of the estate of said decedent. The defendants, Benjamin Umstattd and others joined issue with the executor in the construction of the will.

Enoch S. Pepper, as executor and individually, claimed in his petition in equity that under said will the farm known as the Drenan farm passed absolutely to said Enoch S. Pepper and that the home farm was a farm independent of the Drenan farm and passed to him for life with the right to will one-half of it absolutely and that the remainder passed to the then legitimate living heirs of W. B. Pepper, deceased, who should be construed to be his brothers and sisters then living.

The defendants contended that under said will Enoch S. Pepper received the use of the Drenan farm for life, which they construed to mean the home farm with the right to will one-half absolutely and the remainder to pass to the then legitimate living heirs of decedent, whom they construed to mean all the

heirs of every kind and description who would inherit under the statutes of Kentucky in the absence of a will.

The personal property under the will passed to Enoch S. Pepper. In regard to this there is no controversy.

## OUR CONTENTION.

1. The settled doctrine of construction is that all parts of the will must be construed together and that the facts and circumstances surrounding the testator at the time of the making of the will are competent and proper to be considered when there is ambiguity or uncertainty of meaning in the language used by the testator. Henry's Exor., &c., v. Henry's Exor., 81 Ky., 343.

2. When the testator used the words "then living legitimate heirs" he could not, in view of the term "heirs" in the broad sense, have meant heirship based upon blood relationship in general, because he must have known from the surrounding circumstances that when he died some one of some degree of relationship would survive him. The proof shows that he was quite old and that he lived on very intimate terms with his brother Enoch and that he had high regard for his brother George.

It is apparent that by using the term "living legitimate heirs" he contemplated at least the survival of some brother or sister rather than the remote kindred.

3. It is clear that a construction should be given to the will that would, if possible, carry into effect the intention of the testator and dispose of all of his estate rather than to adopt a construction that fails to dispose of the whole of his estate.

It is but fair to presume that the testator in making a will would not omit 100 acres of his real estate. If the construction of the circuit court be accepted as correct, such would be the case in the disposition of the property of W. B. Pepper, deceased.

4. The principle of law is recognized that the presumption, when a will is made, is that the testator does not intend to die intestate as to any part of his property. Am. & Eng. Ency. of Law, vol. 27, p. 364.

5. The Question of Partnership. Our court has determined that a single transaction is not sufficient to constitute a partnership. See Worthington v. Miller, 4 R., 252.

But where the partners hold themselves out during a term of years and transact business as between each other based upon profits and losses, recognizing the partnership and living under it, the partnership is an established fact without a written contract to determine it.

Pepper's Exr., &c., v. Pepper's Admr., &c.

The direct evidence of the existence of partnership between the parties is shown by the action of W. B. Pepper and E. S. Pepper as partners doing business as W. B. & E. S. Pepper against Benjamin Given, defendant, filed 'n the Fleming Circuit Court in 1876 on which summons issued and which was served on the defendant the 29th day of January, 1876. This action recites specifically that W. B. Pepper and E. S. Pepper are partners doing business under the firm name and style stated. The account on which this action is filed is made out to W. B. and E. S. Pepper. This action so filed is a clear and definite representation to the public that said parties were partners and so recognized that relation existing between them and so held themselves out to the public.

## AUTHORITIES CITED.

1. Devisees under the will. Henry's Exor., &c., v. Henry's Exor., 81 Ky., 345; Peynado's Devisees v. Peynado's Exor., 82 Ky., 5; Wheeler's Heirs v. Dunlap, &c., 13 B. Mon., 292; Williams, &c., v. Williams, &c., 18 B. Mon., 370, 371; Howell v. Ackerman, &c., 89 Ky., 27, 28.

2. The interests of E. S. Pepper as devisee under the will. Am. & Eng. Ency. of Law, vol. 26, 354; James v. Pruden, 14 Ohio St. Rep., 253; Warner v. Willard, 55 Connecticut, 470; Peckham v. Lego, 14 Am. St. Rep., 135, 136, 137; Succession of Allen, 55 Am. St. Rep., 303; Graves, &c., v. Spurr, 97 Ky., 658.

3. The question of partnership. Boyd v. Tabb, 5 R., 516; Williams v. Rogers, 14 Bush, 781; Am. & Eng. Ency. of Law, vol. 17, 835-836-837-830-831-832; Worthington v. Miller, 4 R., 252.

4. The property that passed as the Drenan farm. Sec. 4839 Ky. Stats; chap. 113, sec. 16, Gen. Stats. of Ky.; Howell v. Ackerman, &c., 89 Ky., 26; Graves, &c., v. Spurr, 97 Ky., 658.

J. H. POWER, G. A. CASSIDY AND B. S. GRANNIS, ATTORNEYS FOR APPELLEES.

The decedent, W. B. Pepper, was a widower and childless. His parents were dead, and at his death he left surviving him three brothers, Enoch S., Joseph S., and George F. B. Pepper; also three children of his deceased sister, Elytian, who was the wife of Benjamin Clark, to-wit, Thomas Clark, Samuel Clark and Virginia Allen; also the children of his deceased sister, Nancy Umstattd, viz., Benjamin, Joshua and Lucy, the wife of Walter Neal.

When decedent made his will and also at the time of his death, he lived on what is known as the "Drenan Farm," and his brothers, Enoch S., and George F. B., who were both bache-

lors, lived with him. His brother Joseph S., was a married man residing near and had a large family.

Now our contention is:

1. That there can be no mistake as to the meaning of the words "home farm" used in the will, because he said it was the place where he then resided, known as the "Drenan Farm."

2. That the words "legitimate heirs" and "my legitimate then living heirs," as used in said will, were used in their literal sense and meaning, and applied to all the heirs of the testator at his death, and includes his nieces and nephews as well, and his brothers.

3. In construing a will two primary rules should govern— the first statutory, and the second the creation of the common law and common sense. *First*, "A will should be construed with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator *unless a contrary intention shall appear by the will.*" *Second*, "A will shall, if possible, be so construed as to give to every word and clause some reasonable meaning."

4. We contend (1) that no partnership ever existed between the testator and Enoch S. Pepper; and (2) if any ever did exist the contract was not in writing and was within the statute of frauds; and (3) that Enoch S. Pepper is estopped to claim any portion of the estate as a partner of decedent.

### AUTHORITIES CITED.

Williamson v. Williamson, 18 B. M., 370, 371 and 377; Howell v. Ackerman, 89 Ky., pp. 27 and 28; Bayless v. Prescott, 79 Ky., 257; Turman v. White's Heirs, 14 B. M., 450; Morrison v. Estate of Sessions, 14 Am. St. Rep., 506; Ward v. Stow, 27 Am. Dec., 230; Houston v. Crook, Ohio Sup. Ct.; 4 Ky. Law Rep., 739; Jarman on Wills, vol. 2, p. 262; Kelly v. Vigas, 54 Am. Rep., 235; Roper v. Roper, 75 Am. Dec., 427; Ky. Stats., sec. 4839; Jarman on Wills, vol. 1, p. 475; 3 Met., 159; 1 Mar., 217; 10 B. M., 344; 17 B. M., 740; 10 Ky. Rep., 336; Cole v. Scott, in Jarman on Wills, vol. 1, pp. 332-334; Jarman on Wills, vol. 1, pp. 330 and 331; 3 Met., 159; Am. & Eng. Ency. of Law, 1st ed., vol. 17, 1312; Lindley on Partnership, vol. 1, p. 4; Chancellor Walworth in Chase v. Barrett, 4 p. 160; Price & Co v. Alexander, &c., Am. Dec., 529; Lindley on Partnership, vol. 1, p. 80; Am. & Eng. Ency. of Law, vol. 17, p. 901; Grafton v. Moore, 38 Am. Dec., 478, notes thereto; Brown v. Crandall, in 38 Am. Dec., 478; Rice on Evidence, vol. 1, p. 444; Parsons on Partnership, 368; Smith v. Burnam, Sumn., 435.

OPINION OF THE COURT BY JUDGE NUNN—AFFIRMING ON THE ORIGI-
NAL AND REVERSING ON THE CROSS APPEAL.

On the 19th day of October, 1882, W. B. Pepper made
and executed his will. In the month of February, 1897,
he died. His will was probated in that month in Fleming
county, the place of residence of decedent. The will, so far
as applicable to this case, is as follows:

"1st. I will and bequeath to my brother, Enoch S. Pepper,
the home farm on which I now reside, known as the Drenan
farm, also I will and bequeath to the said Enoch S. Pepper
all the stock that I may own at my decease together with
all crops, all farming implements, household and kitchen
furniture and all the pertenances belonging to said farm.
Also I bequeath to the same brother (Enoch S. Pepper) all
moneys together with all the notes that I have at my de-
cease, after the expenses of my funeral is paid and after
my just and honest debts are paid, should there be any,
and after the said Enoch S. Pepper shall have paid to my
four nephews the following amounts:

"1st. I bequeath to Wesley Pepper, son of Joseph Pep-
per, $100. One hundred dollars.

"2d. A. Wesley Clark, son of Thomas Clark, One Hun-
dred Dollars.

"3d. Wesley B. Allen, son of John E. Allen, One Hun-
dred Dollars.

"4th. Wesley B. McRoberts, son of Asa McRoberts, One
Hundred Dollars.

"These amounts are to be paid to my four namesakes of
whom I have mentioned above by E. S. Pepper, out of the
amount I have willed to him, he, the said Enoch S. Pepper,
is to have and to hold all the property that I have be-
queathed to him (except the amounts above mentioned) ex-
cept the home farm which he shall hold his natural life-

time and at his death one-half of the home farm shall go
to my legitimate heirs, should there be any living at his
decease, the other half of said farm, together with all the
personalties that I have bequeathed to him, be at his dis-
posal to will to whom he may see fit.   To my brother,
George F. B. Pepper, I will and bequeath the use of the
ninety-five acres of land that I bought of him, the said
George F. B. Pepper, a few years ago, that he is to have the
use and all the proceeds of said ninety-five acres of land
his lifetime, and at his death I want the ninety-five acres to
revert back to my legitimate then living heirs.   .   .   ."

Enoch S. Pepper qualified as the executor of the estate,
and on the 12th day of August, 1899, filed a petition in the
Fleming circuit court against the heirs of the decedent,
W. B. Pepper, for a settlement of the estate and for a con-
struction of the will; the executor, Enoch S. Pepper, claim-
ing that under the will, and by a proper construction there-
of, he was entitled to certain lands and personal estate;
which will be hereinafter referred to, and that his brother
Joseph Pepper was entitled to the balance of the estate.

The decedent, W. B. Pepper, was a widower and child-
less.  His father and mother had died long prior to his
death, and when he departed this life he left surviving him
three brothers, to-wit, Enoch S. Pepper, Joseph S. Pepper,
and George F. B. Pepper.  He also left surviving him, in
addition to the above-named brothers, three children of
his deceased sister Elytian Clark, and also three children
of his deceased sister, Nancy Umstattd, who are appellees
herein.   When decedent made and published his will, and
also at the time of his death, he lived on what is designated
in his will as the "Drenan Farm," and his brothers, Enoch
S. and George F. B. Pepper, who were bachelors, lived
with him.   When W. B. Pepper made and executed his

will in the year 1882, he was then the owner of three tracts of land, one of which was the Drenan farm, on which he lived until his death, as already stated, containing 103 acres; another tract, of 100 acres, known as part of the "Old Pepper Farm;" and another tract, containing 95 acres, adjoining the last-named tract. After making the will, and before his death, he purchased and received deeds of conveyance for three other small tracts of land adjoining the Drenan farm, and containing, in the aggregate, about 111 acres.

When Enoch S. Pepper instituted this action, George F. B. Pepper had died, and he instituted it in his individual capacity and as executor, and he construed the will to mean that the whole estate passed to his brother, Joseph S. Pepper, and himself, excluding the appellees, the children of his sisters, from participating in the distribution of the estate; claiming that the language in the will, "legitimate heirs," and "my legitimate then living heirs," sustained him in such construction. He further claimed that under the will he was entitled to the whole of the Drenan tract of land of 103 acres, and also to the 111 acres of land added to it after the date of the will, and also by the use of the words in the will, "except the home farm which he shall hold," etc., he claimed the 100 acres of land known as part of the old Pepper farm.

After the parties joined issues and had taken much proof and in the year 1901, Enoch S. Pepper filed an amended petition, claiming that he and his brother W. B. Pepper had formed a partnership in the year 1867, and that they, as partners, owned the Drenan farm, and the three parcels so added to it; and, afterwards, and during the same year, he filed another amended petition, in which he alleged that the partnership was formed in the year 1865, and that he

and his deceased brother owned all the lands before referred to, as partners, and that his deceasd brother took the deeds to all the lands in his own name, and held same in trust. These amended petitions were controverted by answer. The depositions of a number of witnesses were taken, some of them for the purpose of helping to construe the will; appellants claiming that the terms thereof were ambiguous, and that by reason thereof such testimony was permissible. The court below excluded this testimony, and adjudged that Enoch S. Pepper took under the will the whole of the Drenan farm, and the 111 acres adjoining it, for life, and at his death one-half thereof was to revert to the heirs of W. B. Pepper, and that the 100-acre tract and the 95-acre tract passed to the heirs at law of the decedent. Appellants have appealed from this judgment, and appellees are here on a cross-appeal from that part of the judgment giving Enoch S. Pepper the 111 acres of land adjoining the Drenan farm.

Appellants contend that there is an ambiguity in the will as to the meaning of the words "home farm," and that these words do not refer to the Drenan farm, the home of the testator, but were intended to mean the 100-acre tract, part of the old Pepper place, and took several depositions to prove their contention. We can not agree with appellants in this matter. While the will is inartistically drawn, it is clear that the words referred to mean the Drenan farm, the home of the testator. The first provision of the will contains these words: "I will and bequeath to my brother, Enoch S. Pepper, the home farm in which I now reside, known as the Drenan farm." The proof shows that the testator resided on the Drenan farm from the year 1867 until his death. It was his home farm, and, in the language referred to, he expressly says the Drenan farm is

his home farm.  But appellants contend that further along in the will the testator, by the use of these words, "Enoch S. Pepper is to have and to hold all the property that I have bequeathed to him . . . except the home farm shall go to my legitimate heirs, should there be any at my decease, the other one-half of said farm together with all the personalty that I have bequeathed to him be at his disposal, to will to whom he may see fit," evidently referred to the old Pepper place, of 100 acres, when he used the words "home farm."  This can not be, for the language just quoted does not pretend to devise or bequeath any land or property, but is used as an exception or limitation of what he had previously in his will bequeathed to his brother, and it is certain that no bequest of land to his brother Enoch S. can be found in the will, except the "home farm, known as the Drenan farm."  "Enoch S. Pepper is to have . . . all the property that I have bequeathed to him except the home farm," etc.  What land had he bequeathed to him, except the Drenan farm, and why did the testator refer to it again?  It was evidently for the reason that by the first clause he had given his brother the title to the whole Drenan tract, and he desires to limit the fee to one half, and the other half to a life estate.  There is no escape from this conclusion.  The language is plain, and not ambiguous.  This court is of opinion that language used by the testator, to-wit, "my legitimate heirs," and "my legitimate then living heirs," was used in its literal sense and meaning, and applied to all the heirs of the testator at his death, and at the death of his devisees Geo. F. B. Pepper and Enoch S. Pepper.  There is not a word or sentence in the will indicating that it was the intention of the testator to limit it to his brothers.  This court, in the case

of Williamson v. Williamson, 18 B. Mon., 377, in discussing a similar question, said: "It is clearly incumbent on those who contend that the language of the testator is not to be understood according to its natural and literal meaning to exhibit some solid and satisfactory reasons, drawn from the subject-matter of the devise, or its purpose and objects, the context, or from other provisions of the will, showing that the words employed in this clause are not to be understood in their clear, plain and literal signification." There is not a word in the will which indicates that the testator meant, by the words "heirs" or "legitimate heirs," to exclude any of his kindred or legal heirs after the life estate of Enoch S. Pepper and Geo. F. B. Pepper terminated.

The appellant took the depositions of several witnesses, showing a partnership of some kind between testator and Enoch S. Pepper; statements of testator "that Enoch had as much interest and rights there as he had;" that he (Enoch) owned half of everything there, etc. But it is not shown by any witness or by any pleading or exhibit when the partnership was formed, to what extent or length of time it existed, what capital, if any, either of them had put into the partnership, what they, or either of them, had drawn out of the firm, if anything, or any proof showing that Enoch S. Pepper ever had any capital to invest in the partnership; nor was there any attempt to show or explain by the proof or any pleading why Enoch S. Pepper suffered and permitted W. B. Pepper to take the conveyance of each and every piece of land in his own name, and so hold it until his death, without any reference in any deed or writing showing or even intimating that he held the property in trust, or otherwise than the fee-simple title in himself. And when we consider the further facts that Enoch S. Pepper lived with his brother, the testator, when the will was

made, in 1882, and from that time until the death of W. B. Pepper, in 1897, and both knowing that the Drenan farm was by the will given to Enoch S. Pepper; that in the will not a word nor an intimation exists indicating a partnership or any joint ownership of property, real or personal, but, on the contrary, referring to the property as his, without any exceptions and reservations; and the further important fact that Enoch S. Pepper accepted the provisions of the will and became the executor in 1897, and continued as such until the year 1899, when he instituted this action, asking the court to construe the will, and when the pleadings were filed and proof taken, and indications were that the court would not agree as to appellant's construction of the will; that in 1901 Enoch S. Pepper filed an amended petition, claiming half of the Drenan tract of land and the adjoining 111 acres by reason of a partnership existing between himself and testator since 1867, and afterwards filed another amended petition, changing the date of the formation of the partnership from 1867 to 1865, apparently for the purpose of antedating the deeds to W. B. Pepper for the 100-acre old Pepper farm and the 95-acre tract, and claimed that he owned half of them under this alleged partnership—in view of these facts, we are of opinion that the circuit court was right in decreeing against appellant's claim of partnership.

We are of the opinion that the lower court erred to appellees' prejudice in construing the will, in this: that Enoch S. Pepper took under the will the Drenan farm and the 111 acres added to it and purchased after the date of the will. We recognize the fact that a will should be construed to speak and take effect at the death of the testator, unless a contrary intention shall appear by the will, and that, if possible, a will shall be so construed as to give to every

word and clause some reasonable meaning.  The clause in controversy is as follows:  "I will and bequeath to my brother, Enoch S. Pepper, the home farm on which I now reside, known as the Drenan farm.  Also I will and bequeath to said Enoch S. Pepper all the stock that I may own at my decease."  Does this clause of the testator's will speak from his death, or "does a contrary intention appear?"  As to the real estate devised, by the express terms it refers to the date of its execution, and, as to the personal estate, by direct statement, it refers to the time of testator's decease, for in the one case he devised the "home farm upon which I now reside, known as the Drenan farm," and in the very next line he gives the same brother " all the stock that I may have at my decease."  It is conceded that at the date of the will testator's home farm—the Drenan farm—contained 103 acres; and evidently he intended to, and did, will to his brother this particular piece of property.  In Jarman on Wills, 332, it is said:  "Another question is whether the enactment which makes the will speak from the death has the effect of carrying forward to that period words pointing at the present time.  For instance, supposing the testator to bequeath 'all the messuage in which I now reside,' and that after making his will he changed his residence to another home belonging to him, which he continues to occupy until his death, does the act make the word 'now' apply to the home occupied by the testator at his death?  It is conceived that the principle will not be carried such a length, and that this would be considered as a case in which 'a contrary intention appears by the will,' for the reference is to a specific thing then in existence, and the words 'in which I now reside' are the only distinguishing terms of description."  It is not contended by appellants that any of the lands bought after the

date of the will were ever the property of Drenan, or a part of the original tract, or were ever known as Drenan lands; but their contention simply is that as accretions to it, and under the statutory rule of construction referred to, the lands passed under the term "home farm on which I now reside." But to so hold, the court must entirely disregard the last descriptive clause, "known as the Drenan farm," and regard it as surplusage, and without any meaning at all. Suppose the testator had been more exact in his description when he wrote his will, and had said, "I will and bequeath to my brother Enoch S. Pepper the home farm upon which I now reside, and bounded as follows," and had then proceeded to give the metes and bounds of the 103-acre Drenan tract; would any one contend that future acquisitions would pass under this devise, or that Enoch S. Pepper could hold under the will any land outside of the boundary given? We think not. Yet the descriptive words of the testator are as clear and strong as though he had given the metes and bounds. He knew when he wrote the will, and up to his death, what comprised the Drenan farm; and he described it in such manner as clearly to define his intention, which this court can not disregard.

It appears from the will that the testator devised to Enoch S. Pepper the real estate referred to, and all of his personal estate, out of which his debts and funeral expenses, and four special devises, of $100 each, were to be paid; and it appears from the record that testator's estate was bound as security on a debt to one Slack for appellee, Thomas Clark, and that Enoch S. Pepper paid this judgment. The court is of opinion that whatever may be realized on this claim should be returned to the estate of Enoch S. Pepper, for it was paid out of property willed to him. On the settlement of accounts of Enoch S. Pepper as executor, his

estate should not be credited with that part of the taxes paid on his individual property for the years 1898, 1899, 1900, 1901. The balance should be credited on appellant's account of rents, and not deducted from the personal estate willed to Enoch S. Pepper.

For the reasons indicated, the judgment of the lower court is affirmed on the original appeal, and reversed on the cross-appeal, and remanded for further proceedings consistent with this opinion.