Stephen E. Young, Trustee in Equity,

*vs.*

Philip S. Mosher, et als.

Cumberland.   Opinion April 25, 1916.

*Intention of testator.   Rule as to after-acquired property passing under will.*
*Rule as to finding of fact by sitting Justice.   Wills.*

Appeal from a decree of the sitting Justice in a bill in equity, brought by
the trustee under the will of Julia H. W. Mosher, asking for the con-
struction of said will, and especially the sixth clause thereof.

*Held:*

1.  The statute of this State, R. S., chap. 76, sec. 5, providing that "real
estate owned by the testator, the title to which was acquired after the
will was executed, will pass by it, when such appears to have been his
intention," does not affect the issue here.   This statute was passed to
mitigate the severity of the common law rule that prevented after-acquired
real property from passing under a devise, on the theory that a devise
of real property was held at common law to be in the nature of a con-
veyance and to speak imperatively as of the date of its execution.   To
correct this injustice, statutes have been enacted, both in England and in
most, if not all, the states of this country, similar to the statute in this
State; but that statute is invoked where the question lies between certain
property passing by the will or by descent; in other words between testacy
and intestacy.

2.  In one aspect, the testatrix could have had no actual intention what-
ever as to the after-acquired property at the time she executed the will.
Not then owning it, she could not then have desired that it pass to her
children and grandchildren, and then to the church under item six, nor
that it should form a part of the trust fund under item seven.   And this
absence of specific intention applies to both clauses with equal force.
But in a broader sense the general intent as to after-acquired property
may be ascertained in a given case, and must be gleaned from the will
itself, viewed in the light of facts at the time of its execution within the
knowledge of the testator.

3.  If the devise is of the whole of a certain class of property, then future
acquisitions within that class are embraced as a matter of law; but future
acquisitions outside that class are not included.

4.  The sitting Justice finds as a fact, as stated in the decree, that the after-acquired parcels "are both included in and constitute the property described in the sixth clause of said will as the property commonly known as the Woodford homestead property." This finding has the force of the verdict of the jury, and must stand unless it is manifestly wrong. A careful study of the testimony justifies the finding and warrants the decree.

Appeal from the decree of a single Justice in a bill in equity, brought by the trustee asking for construction of the will, and especially construction of a certain clause in said will known as the sixth clause. Decree of the sitting Justice affirmed.

The case is stated in the opinion.

*Libby, Robinson & Ives,* for complainant.

*Clifford E. McGlauflin,* for Woodford Congregational Church.

*Carroll S. Chaplin,* for City of Portland.

*John F. Dana,* for Harris P. and Helen A. Mosher.

*Thaxter & Holt,* for President and Fellows of Harvard College.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, JJ.

HANSON, J. This is an appeal from a decree of the sitting Justice in a bill in equity, brought by the trustee under the will of Julia H. W. Mosher, late of Boston, Massachusetts, asking for the construction of said will and especially of the sixth clause which reads as follows:

6. "I give and devise the property commonly known as the Woodford Homestead property situated in that part of Portland, Maine, formerly known as Deering, to my son Harris P. Mosher for life and on his death to his wife for life and on her death to the children of said son in equal shares as joint tenants for the life of the longest liver. On the death of the survivor of the children of my said son Harris P. Mosher, I give said property to my son Philip S. Mosher for life and on his death to his wife Ella F. Mosher for life or until her marriage, and upon her death or marriage, which ever shall first occur, I give and devise said property to the Woodford Congregational Church in fee simple, but if said church is not then in existence, then to the City of Portland to be used for some public or charitable purpose having the name 'Woodford' attached thereto."

Then follows the seventh or residuary clause, beginning "The rest, residue and remainder of the real and personal estate which I may own or to which I shall be in any way entitled at my death or over which I shall then have any power of appointment or disposition, by my will, including lapsed legacies and devises (hereinafter called my residuary estate) I give, devise and bequeath unto and to the use of my said trustee," etc., for the purposes specifically set forth therein. At the time of the execution of the will, on December 23, 1910, her homestead property at Woodfords consisted of a house and lot on the corner of Forest avenue and Woodford street. Subsequently on December 15, 1913, she purchased a strip of land twenty rods in length by five in width, which had at one time been a part of the original Woodford property, afterwards occupied as a railroad location, and finally abandoned by the railroad company and sold. This strip was cut in two by Woodford street when it was laid out, so that while the strip was formerly a part of the Woodford homestead, by reason of the construction of Woodford street and the various conveyances that had taken place in the course of years, the northerly end of said strip was contiguous on its easterly side to the homestead property owned by the testatrix at the date of the will, while that part of the strip south of Woodford street was separated from that corner lot by said street.

Mrs. Mosher died in 1914 without changing her will. The precise question to be determined by the court is whether these two after-acquired parcels passed under the sixth clause of the will, or under the seventh, the residuary clause. The sitting Justice held that they passed under the sixth clause and from that decree an appeal was taken to this court.

We think the decree below should be affirmed.

The statute of this State, R. S., ch. 76, sec. 5, providing that "real estate owned by the testator the title to which was acquired after the will was executed, will pass by it, when such appears to have been his intention," does not affect the issue here. This statute was passed to mitigate the severity of the common law rule that prevented after-acquired real property from passing under a devise, on the theory that a devise of real property was held at

common law to be in the nature of a conveyance and to speak imperatively as of the date of its execution. 1 Schouler Wills, 5th ed., sec. 486. To correct this injustice, statutes have been enacted both in England and in most if not all the states of this country, similar to the statute in this State. But that statute is invoked where the question lies between certain property passing by the will or by descent; in other words between testacy and intestacy. That is not the question here. Testacy is admitted and the issue is whether this after-acquired property passed under the sixth clause or the residuary clause. The latter is ample to carry it, if it had not already been disposed of.

This brings us, as in all this class of cases, to the pivotal problem of intention. In one aspect the testatrix could have had no actual intention whatever as to this after-acquired property at the time she executed the will. Not then owning it, she could not then have desired that it pass to her children and grandchildren and thence to the church under item six, nor that it should form a part of the trust fund under item seven. And this absence of specific intention applies to both clauses with equal force.

But in a broader sense the general intent as to after-acquired property may be ascertained in a given case and must be gleaned from the will itself, viewed in the light of facts at the time of its execution within the knowledge of the testatrix. These surrounding facts throw some light here. Prior to 1851 Ebenezer D. Woodford, the father of the testatrix, owned a large tract of land at what is now Woodford's Corner, extending easterly from Forest avenue to Back Cove. This was known as the E. D. Woodford homestead property. During the life of Mr. Woodford, and as early as 1840, lots were sold by him from this tract. In 1851, after his death, the Kennebec and Portland R. R. Co. and the York and Cumberland R. R. Co. purchased a right of way through the middle of it, parallel with Forest avenue. Other lots were sold, and Woodford street was laid out across it at right angles to Forest avenue about fifty years ago.

The testatrix by descent and by purchase became the owner of what remained of the Woodford property, the last deed to her bearing date January 13, 1872, and after she acquired title she

conveyed a part of the property, including the fee of the railroad location.   Finally the ownership was reduced to a corner lot on which stood the family mansion at the corner of Forest avenue and Woodford street, and here she lived with her family until about 1892, when she moved to Boston, Massachusetts, retaining however the title and renting the property to tenants.

It will thus be seen that the after-acquired property had been at one time a part of the Woodford estate, a fact well known to the testatrix, and so far as appears this is all the real estate that she owned in that vicinity.

The true rule for interpreting the scope of clause six seems to be this; is its language of such a generic character, so broad in its scope, that the property described will pass under the will whether increased or diminished during the lifetime of the testatrix?  Whatever comes fairly within the term "the property commonly known as the Woodford Homestead property" should pass by that clause.

The devise should cover whatever would answer to that description.  If the devise is of the whole of a certain class of property, then future acquisitions within that class are embraced as a matter of law, but future acquisitions outside that class are not included.  The exclusion rule is well illustrated by *Blaisdell* v. *Hight,* 69 Maine, 306, where the words were "I give and devise to my son . . . all my real estate situate in Sidney."  Subsequently a parcel of land not situate in Sidney unexpectedly descended to the testator from his brother.  The court held that this after-acquired land did not pass by the will.  Suppose however that the testator had acquired other land in Sidney before his decease, can there be any doubt that that also would have passed under the will?

Again, in *Pepper's ex'r.* v. *Pepper's Admr.* 115 Ky., 520, 74 S. W., 253, the words were: "I will and bequeath to my brother Enoch S. Pepper the home farm on which I now reside, known as the Drenan farm," etc.  Between the date of the will and his death the testator purchased a tract of 111 acres adjoining the Drenan farm.  The court held that the devise did not include the tract subsequently purchased, that the words "home farm on which I now reside" limited as well as described the property, but the

court recognized the generic rule in these words: "It is not contended by appellants that any of the lands bought after the date of the will were ever the property of Drenan, or a part of the original tract or were ever known as Drenan lands, but their contention simply is that as accretions to it, and under the statutory rule of construction referred to, the lands passed under the term 'home farm on which I now reside,' but to so hold, the court must entirely disregard the last descriptive clause 'known as the Drenan farm' and regard it as surplusage and without any meaning at all."

So a devise to W of "the residue or remainder of my real estate, being a lot of land adjoining his own" was held not to cover a lot subsequently purchased which adjoined neither W's land nor the lot devised to W. *Wheeler* v. *Brewster,* 68 Conn., 177.

Let us now turn to illustrative cases holding that after-acquired real estate will pass if the descriptive words are sufficiently generic.

A devise of all real estate in W to B was held to cover other land in W afterwards acquired by a foreclosure by the testatrix of a mortgage received from her father's estate, in Dickerson's Appeal, 55 Conn., 223.

A devise of the Cunningham place, of which the testator at the time owned but one-half but subsequently acquired the other half, was held to vest in the devisees title to the entire place. *McRae* v. *Lowery,* 80 Miss., 47, 31 So., 538.

In *Garrison* v. *Garrison,* 29 N. J., Law, 153, a testator devised to H. G. all that part which he then owned of a certain farm lying on the east side of a specified road. He afterwards purchased half an acre of land, which had before been a part of the farm and was in possession of it when he died. The devise was construed to include the half acre.

In *Kimball* v. *Ellison,* 128 Mass., 41, the language was: "I give, devise and dispose of all my estate real and personal, together with any and all estate, right or interest in lands which I may acquire after the date of this will . . . in the following manner," and after authorizing the executors to sell any of his real estate "not herein specifically bequeathed or appropriated" the testator devises his "mansion house and the other buildings thereon and the privileges thereunto belongong" to B. After the date of his will

the testator purchased an estate adjoining his mansion house, removed the building standing thereon, tore down the fences and incorporated it into his mansion house property. The court held that the after-acquired parcel passed under the devise to B.

In *Wait* v. *Belding,* 24 Pick., 129, the words, "the whole of my lands and buildings lying and being within the town of H" were held to be sufficiently broad to embrace land subsequently purchased, and although the will was made prior to the enactment of the statute removing the common law inhibition as to after-acquired property, and a codicil was executed republishing the will after this property was acquired, Chief Justice Shaw rests his decision on the breadth of the language in the original will and says: "In general a will looks to the future, it has no operation either on real or personal property till the death of the testator. General words, therefore, may as ·well include what the testator expects to acquire as what he then actually holds. The term, 'all my property,' may as well include all which may be his at his decease as all which is his at the date of the will, and will be construed to be so intended unless there are words in the description which limit and restrain it."

It remains to apply this just and firmly settled rule to the description of the property devised in this case. Is it sufficiently broad to embrace the estate in controvesy? This was a question of fact to be decided by the sitting Justice in the light of the facts within the knowledge of the testatrix at the time of making the will and of the testimony of the witnesses. He finds as a fact, as stated in the decree, that these after-acquired parcels "are both included in and constitute the property described in the sixth clause of said will as the property commonly known as the Woodford Homestead property." This finding has the force of the verdict of a jury and must stand unless it is manifestly wrong. A careful study of the testimony justifies the finding and warrants the decree.

It should be observed that the testatrix did not devise merely her "house and lot at the corner of Forest avenue and Woodford street," but "the property commonly known as the Woodford Homestead property situated in that part of Portland, Maine, formerly known as Deering,"—words of far ampler latitude.

It is significant, too, that under her will this Woodford property which had formerly belonged to her father she desired to keep in the family as long as possible, devising it for life to her son Harris and his family, and then at their decease for life to her other son, Philip and his wife, and at their decease to the Woodford Congregational Church, if in existence, otherwise to the city of Portland "to be used for some public or charitable purpose having the name 'Woodford' attached thereto." Evidently the testatrix was proud of the name and wished the property that bore it to go in the direction that she specified and not under the residuary clause. Sentimental reasons entered into this devise in large measure.

On the whole we have no hesitation in saying that the true construction of the will is as found by the sitting Justice and the entry must be,

*Decree below affirmed.*