## ALICE V. BOURKE et al. *vs.* GRAFTON BOONE et al.

*Construction of a Will—After Acquired Real Estate Not Disposed of by Will—Disinheriting Heir—Introductory Clause of Will.*

G. L. by her will gave to her brother for life, with remainder over, "all the land belonging to me being my part which I obtained from my father, and adjoining the lands" of certain parties. There was no residuary clause in the will and its introductory clause professed to dispose of all the estate of the testatrix. Her brother's will made on the same day, devised his land to her. He died during her life and she acquired the land belonging to him as the sole devisee thereof. Upon her death the land so acquired was claimed by the remainder-man named in her will as above set forth. Code, Art. 93, sec. 321, provides that every last will shall pass all the real estate which the testator had at the time of his death. *Held*,

1st. That Code, Art. 93, sec. 321, does not operate to pass under a will all the real estate of a testator when that was not his intention, and his heir at law will not be disinherited unless the estate is given to some one else.

2nd. That in construing a will resort may be had to the introductory clause only when the intention of the testator does not clearly appear from the words used in the clause under consideration.

3rd. That the language of the will in this case clearly shows that it was the intention of the testatrix to devise only the land she owned when the will was made and which she described as having been obtained from her father, and that therefore the real estate subsequently devised to her does not pass under her will and she died intestate thereof.

Appeal from a decree of the Circuit Court for Anne Arundel County (JONES, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER JJ.

*Robert Moss* and *James R. Brashears*, for the appellants.

The after acquired real estate passed under the will of Georgie Linstid by virtue of the provisions of Code, Art. 93, sec. 321. *Dalrymple* v. *Gamble*, 68 Md. 524; *Ruckle* v. *Grafflin*, 86 Md. 630. The first item of the will fully disposed

of all the real estate, but if " the intention of the testatrix does not clearly appear from the words used in a clause of the will which is to be construed, then resort may be had to the introductory clause, if there be one, to explain their meaning." *Chamberlain* v. *Owens*, 30 Md. 454; 29 *Am. & Eng. Ency. of Law*, 344.

So reading the introductory clause in connection with the other parts of the will, the testatrix says in effect : " I give all my real and personal estate to my brother, John Linstid, for and during his natural life, and then to my niece, Alice V. Boone." *Dalrymple* v. *Gamble*, 68 Md. 526; *Ruckle* v. *Grafflin*, 86 Md. 631; *Cheston* v. *Cheston*, 89 Md. 466.

By omitting the words of description of the land, which we claim should be rejected as surplusage, then there is a complete devise of all her real estate—thus : " I give and bequeath to my brother, John Linstid, all the land belonging to me, (*being my part which I obtained from my father, and adjoining the lands of Thomas Robinsons' heirs, and James Stallings' heirs*), to have and to hold so long as he may live, and at his death  *  *  *  ." The first clause of this item gave all the land belonging to her in express terms, and, that being so, it cannot be defeated by the words of description that follow : 1 *Jarman on Wills*, 444 to 448; 29 *Amr. & Eng. Ency. of Law*, 371; 1 *Jarman on Wills*, 742 to 744; *Colton* v. *Stenlake*, 12 East. Rep. 515; *Cheston* v. *Cheston*, 89 Md. 466.

If the testatrix had owned the same two adjoining tracts of land at the time of the execution of her will the words of description would not have defeated the devise, because the implication would have been too strong—considering the express devise by the first clause in the first item.

It will be observed by reference to the whole will that technical words are not used, and it clearly appears that the draftsman did not understand the difference between real estate and ground rent, for if he had understood the difference, or had known that ground rent was real estate, it is natural to presume that he would not have made two items in the will, but would have been satisfied with the words " *all the land belong-*

*ing to me*" used in the first item, which of themselves would have passed all the real estate the testatrix had, wheresoever situated, and also after acquired lands. In the case of *Dalrymple* v. *Gamble, supra*, this Court held that the words "*all my personal property*" carried the after acquired personal estate, and it seems reasonable that in this case the words "*all the lands belonging to me*" will pass the after acquired real estate —the two wills being similar in form.

The fact that the will of her brother was executed the same day and attested by the same witnesses, and, as the learned Judge below remarked, "bearing evidence of having been prepared by the same draftsman," raises a conclusive presumption that she knew the provisions of her brother's will; and then having lived ten years after the death of her brother without making any change in her will there can be no reasonable doubt as to her original intention of disposing of all the property she had at the time her will was executed, and what she might take under her brother's will if she should survive him. This event was evidently in her "contemplation when the will was executed." *Tayloe* v. *Mosher*, 29 Md. 450. "The natural and reasonable presumption is that when a will is executed, the testator did not intend to die intestate as to any part of his property." 29 *Amr. & Eng. Ency. of Law*, 354; *Dulaney* v. *Middleton*, 72 Md. 76.

*E. J. W. Revell*, for the appellees.

If the contention of the appellants be right sec. 321, Art. 93 of the Code would prevent a testator, who has executed a will in due form of law, from leaving any portion of his estate undisposed of, notwithstanding there was a clear intention shown by the will to do so. It would also change the well-established rule of law that when a testator devises by a will the same estate to his heir at law that the heir would take by inheritance, he shall be held to take by inheritance and not by the will. If this section of the Code were understood literally, its effect would be to make every will pass the real estate of the testator without regard to its provisions whether

they relate to real estate or not and so prevent the possibility of any one who leaves a will, duly executed, to die intestate of his lands. Such construction would be wholly untenable. Whether the real estate passes under the will or not must depend upon the terms of the will itself and not exclusively upon the words of the Code. It seems perfectly clear in view of the limitations in the second and third clauses that even if she had the title to this property, now in dispute, vested in her at the time of the execution of the will the same would not have passed to her devisee but would have descended to her heirs at law.

If this case can be brought within the purview of the Code, Art. 93, sec. 321, it must be by force of the introductory clause, to-wit: "What property it has pleased God to bless me with in this life, &c." This clause cannot be segregated and interpreted alone but must be taken in connection with the following clauses of the will, and in the very next clause we find this expression limited and restricted "to the land belonging to me, being my part which I obtained from my father and adjoining the land of Thomas Robinson's heirs and James Stallings' heirs," and by the third clause of the will this expression is limited and restricted and made to embrace only "the rent of all that lot of ground lying in the city of Baltimore and described in a deed which I hold, and conveyed to me by W. C. Pitcher and others ; which will describe more fully, &c." These two clauses contain a full description of all the real estate which it appears the testatrix had in mind to devise or intended to devise.

The heir at law is not to be disinherited except by express terms or by necessary implication, and unless the real estate is specifically devised the title of the heir must prevail unless the intent to the contrary is satisfactorily established. *Rizer* v. *Perry*, 58 Md. 112; *Rea* v. *Twilly*, 35 Md. 409; *Berry* v. *Berry*, 1 H. & J. 258.

Page, J., delivered the opinion of the Court.

This appeal comes up from the decision of the lower Court

made on a case stated, under Rule 47 of the Equity Rules. On the 13th of April, 1875, Georgie Linstid made and executed her last will and testament, the disposing clauses of which are as follows :

"*Item.* I give and bequeath to my brother, John Linstid, all the land belonging to me ; being my part which I obtained from my father, and adjoining the lands of Thomas Robinson's heirs, and James Stalling's heirs, to have and to hold so long as he may live, and at his death, then the said land, I give and bequeath to my niece, Alice V. Boone, and her heirs forever.

"*Item.* I give and bequeath to my brother, John Linstid, the rent of all that lot of ground, lying in the city of Baltimore, and described in a deed which I hold, and conveyed to me by W. C. Pitcher and others ; which will describe more fully, to have and to hold said ground rent so long as he may live, and at his death, the said ground rent to go to my niece, Alice V. Boone and her heirs forever.

"*Item.* I give and bequeath unto my brother, John Linstid, my half of all personal property, that we may have, both personal and mixed, to have and to hold as long as he may live, and at his death, I give and bequeath to my niece Alice V. Boone and her heirs forever."

On the same day her brother, John Linstid, also made his will by which he devised and bequeathed to his sister Georgie, all the land on which he lived, as well as all the personal property that he should have at the time of his death.

John Linstid died in the year 1880, without revoking or cancelling this will. Georgie died in 1900. At the time of her death, in addition to the property she had at the time of the execution of her will, she was seised and possessed of the real estate which passed to her under the devise in the will of her brother, John. She left surviving her, as her heirs at law and next of kin, four nephews and one niece, the latter being the Alice V. Boone mentioned in her will. The question submitted to the Court was whether, "the said Georgie Linstid died intestate as to the tract of land which

she took under the will of her brother John ; or did it pass to
the said Alice V. Boone, the remainder-man mentioned in the
will of the said Georgie Linstid ?"

It is contended that under the provisions of sec. 321 of Art.
93 of the Code, this after acquired property passed under her
will to Alice V. Boone.   The effect of that section of the
Code was stated by JUDGE ALVEY in *Rizer* v. *Perry*, 58 Md.
121.   In his opinion, he said, that by that section, "the will
is simply made to speak as of the time of the death of the
testator, and in that respect changed the former rule of con-
struction or operation of wills.   But it has never been sup-
posed that it was the design of that provision to pass the real
estate of the testator, irrespective of his real intention."

And this Court in its opinion, in the same case, (p. 137)
said : "The effect of the decision in *Rea* v. *Twilley*, (35 Md.
409), is to reassert the presumption in favor of the heir, and
to restate the doctrine, that the intention is the main object of
search in the construction of wills."   We take it to be clear,
(notwithstanding anything in this statute) that what we must
ascertain in this case, as in all others for the construction of
wills, is to learn what the testator intended ; such intention to
be collected from her own words ; and if we cannot find she
has given the estate to some one else, it must go to her heirs.
*Zimmerman* v. *Hafer*, 81 Md. 357.

Though there should appear an intention to disinherit the
heir, yet as was said in the case just mentioned, citing from LORD
MANSFIELD, the heir " must inherit, unless the estate is given
to somebody else ; and the reason is, that the law provides
how a man's estate at his death shall go, unless he, by his
will, plainly directs that it be disposed of differently."   *Ridge-
ley* v. *Bond*, 18 Md. 448.

In *Rea* v. *Twilley*, 35 Md. 409, it was said, that the heir is
not to be disinherited, " except by express words or by nec-
essary implication."   And further, in arriving at the meaning
of the testator, we must not confine our intention to parts of
the instrument, but " must look at the whole will, and read it
in the light of the circumstances in which the testator was

placed, and the nature of her property and estate." *Stannard v. Barnum*, 51 Md. 452. There is no residuary clause in this will, and the several disposing clauses contain specific descriptions of the property that was intended should be passed by them.

The first item devises to John Linsted for life, with remainder to Alice V. Boone, " all the land belonging to me, being my part of what I obtained from my father, and adjoining the lands," etc.

We cannot regard this as a general devise or equivalent thereto, for she proceeds to declare specifically and particularly what it is she intends shall pass. The words, " all my land," do not stand alone, and they must be taken in connection with the words that immediately follow; which are, "being my part of what I obtained from my father," etc. If the words, " being my part " (which merely serve to connect what precedes with words that follow) be omitted, the devise would then be, " I devise all the land belonging to me, which I obtained from my father," etc.

If she had been seised and possessed of other real estate at the time she executed the will, or had employed words sufficient to convey other real estate, the case would not have been like the one with which we now have to deal. But when she grants all her land, and in the same item specifically declares what she meant by all her lands, and the lands so described are in fact all she then had, there is no room for doubt ; the words themselves, according to their ordinary grammatical meaning, cannot be interpreted but in one way.

If we regard the circumstances under which the will was made, this construction is fully supported. Her own and her brother's will were made on the same day, and from the similarity of phrase contained in them, were probably drawn by the same person.

John Linstid by his will gave her all the property of which he was seised and possessed, and she gave to him all she then had for life. Is it possible to believe that she then had in her mind the intention of disposing to John his own property,

which she could only receive from him at his death? To entertain that belief we would be forced to hold that she intended to give him a life estate in property which she could not devise until after his death. What she must have intended, therefore, was merely to make disposition of what she then had. Her will is effective for that purpose, according to a plain construction of its terms ; but to construe it so as to make the property pass under it which she subsequently acquired by the will of John Linstid, would be not only to strain the language employed but to suppose that she could have had it in her mind, to dispose to John Linstid of that which she could not have acquired during his life.

It is contended further that the words of the first item of the will must be read in connection with the introductory clause in which are found the words, " what property it hath pleased God to bless we with in this life, I give and bequeath in manner and form following to-wit," &c.

But it is well settled upon authority, and in reason, that it is only when the intention of the testator does not clearly appear from the words used in a clause of the will to be construed, that resort may be had to the introductory clause. *Chamberlain* v. *Owings,* 30 Md. 447. And even if these words would indicate an intention not to die intestate, yet they would be ineffective to pass the estate and thereby disinherit the heir, unless the will plainly, or by necessary implication, directed to whom the estate should go. (*Supra.*)

But these words do not necessarily import a different intention than that we have ascribed to the testatrix. They may indeed be as well understood as having reference to the property she had when the will was made, as to that she was afterwards to acquire. It is true a will ordinarily speaks as of the death of its maker, but that would not be the case, if by a fair construction of its terms a contrary intention was indicated. *Hammond* v. *Hammond,* 55 Md. 582.

Hence we think it clear from the terms of the will, when read in the light of the circumstances under which it was executed, or without such aid, that the testatrix intended to dis-

pose of only such property as she specifically described and that therefore the real estate devised to her by John Linstid, does not pass under the will, and that she died intestate thereof.   The decree will be affirmed.

*Decree affirmed, costs to be paid out of the estate.*