THE SUSSEX TRUST COMPANY, Executor of the Last Will and Testament of Joseph W. Marsh, Deceased,

*vs.*

MARGARET E. POLITE AND OTHERS.

*Sussex, Jan. 15, 1919.*

Declarations, whenever made by a testator as to his intentions in using certain words in his will, or as to a proper construction to be made of them are inadmissible in evidence.

Evidence is always admissible as to the state of the testator's property, and his purpose in acquiring it, as distinct from evidence of his declarations as to the meaning of the words of his will.

The testator's purpose in acquiring property may be shown by his declarations or acts.

The intention of the testator must be drawn from the language of the will, viewed in the light which the situation and circumstances connected with the property may shed upon it.

Where testator, after devising forty-five acres, sold part of it and acquired a new parcel contiguous thereto, and actually used it as part of the tract theretofore owned, so that the acreage was increased beyond forty-five acres, on the issue whether the enlarged tract passed under the devise, testimony was admissible of testator's declarations as to his reasons for making the changes and as to the use made of the after-acquired land.

The Delaware statute as to after-acquired land applies to general and not specific devises.

In a will devising to one all that parcel of land, situate in S. County, "where I now reside," containing forty-five acres, more or less, the word "now" is not a limitation, but an item of description, and does not of itself exclude from the devise after-acquired property, annexed to and enlarging the devised tract.

A devise of a described tract "on which I now reside" *held* to pass to the devisee a tract of thirty-three acres which was acquired after the making of the will by the testator for the purpose of adding it to the tract on which he resided, and which he did in fact annex thereto, by effecting a unity of possession and actual occupation.

BILL BY EXECUTOR FOR INSTRUCTIONS. Joseph W. Marsh by will dated January 19, 1916, directed his executor to sell all his property "excepting, however, the lands and chattels hereinafter more particular devised or bequeathed," made certain legacies, pecuniary and specific, and by the fifth item devised, as follows:

"Fifth: I give and devise unto Margaret E. Polite, should she be living at the time of my death, all that certain tract, piece or parcel of land, situate in Sussex County, Delaware, where I now reside, lying on both sides of the county road leading from Millsboro to Lewes, adjoining lands of Joseph Moore, Erasmus W. W. Marsh and others, containing forty-five acres, more or less, for and during the term of her natural life, and at her death the said property to go to Dr. Joseph M. Martin, his heirs and assigns forever."

The testator died March 1, 1917, and letters testamentary were granted to the executor, the complainant. Both Margaret E. Polite and Dr. Joseph M. Martin survived the testator. At the time the will was made the testator owned and resided on a tract of land described as set forth in the will, and containing about forty-five acres. Thereafter he conveyed twelve acres, part of this tract, being a lot not contiguous to the rest of it, and about the same time acquired by deed another lot containing thirty-three acres and located contiguous to the land which he had theretofore owned and devised as aforesaid. At the time of making the will he resided on the tract described therein, and at his death resided on the tract as changed as above stated.

By the bill the executor alleged that Margaret E. Polite, the life tenant under item fifth, and Joseph M. Martin, the devisee thereunder in remainder, claimed that this thirty-three acre tract

was a part of the tract devised to them, and that the residuary legatees claimed it to be a part of the estate of the deceased which had not been particularly devised, and, therefore, should be sold by the executor. The executor further represented that it could not convert, or fully administer, the estate as directed until the question so raised was settled, and asked for instructions. All of the devisees and legatees were made parties defendant.

A demurrer to the bill by Margaret E. Polite for want of equity was overruled, and thereafter she answered the bill, claiming therein that the testator by the exchange of the two tracts intended that the thirty-three acre tract of land acquired after making the will became a part of the land described in the fifth item as "the place where I now reside"; that he in his lifetime declared such to be his intention; and that as further evidence of such intention he used and occupied the after-acquired tract as part of the place on which he resided at the time of making the will and at the time of his death.

At the hearing of the cause, evidence was produced to show that by declarations by the testator his purpose in acquiring the thirty-three acre tract was to make it part of the home place. It was also shown that he removed the fence separating it from the land theretofore owned by him, and cultivated and used it as part of the place or farm on which he resided until his death. This evidence was admitted after objection, and subject to be disregarded or stricken out if the court should conclude that it was inadmissible in evidence.

*Joseph L. Cahall*, for complainant and for some of the residuary legatees.

*Robert C. White*, for life tenant.

THE CHANCELLOR. In the opinion overruling the demurrer the jurisdiction of the court was based on the need of the executor for instructions to properly perform its duty to convert the estate of the decedent as directed by the will. (*Ante p. 37.*)

Briefly stated the testator in this case, after making a will devising a tract of land capable of identification by the general description thereof, and which contained forty-five acres, sold part of the tract and acquired a new parcel contiguous to the tract

described in the will, and actually annexed the new tract and used it as a part of the tract theretofore owned, whereby at his death the acreage was increased beyond forty-five acres.

The first question is as to the admissibility of the testimony (1) of declarations of the testator as to his reasons for making the changes, and (2) as to the use made of the after-acquired land. In this case there is no ambiguity, patent or latent, in the will, for it is entirely clear what land was mentioned in the will, and there was no error in the description thereof according to his ownership when the will was made. If he had made no changes in ownership after making the will there would have been no need for evidence *aliunde*. But having made the changes, was the evidence above referred to admissible?

Declarations whenever made by a testator as to his intentions in using certain words in the will, or as to a proper construction to be made of them, are inadmissible in evidence. And the reason is clear and substantial, and it was thus stated by the Court in *Hearne v. Ross*, 4 *Harr*. 46:

"Parol evidence is inadmissible to add to, take from, vary, or explain a written instrument like this. A last will and testament must by our statute of wills, be in writing, and executed with certain formalities. If a paper so executed could be varied by parol, it would repeal the statute."

But evidence is always admissible as to the state of the testator's property, and his purpose in acquiring it, as distinct from evidence of his declarations as to the meaning of the words of his will.

In *Sanford v. Raikes*, 1 *Mer*. 646, Sir William Grant said:

"I had always understood that where the subject-matter of a devise was described by reference to some extrinsic fact, it was not merely competent but necessary to admit extrinsic evidence to ascertain the fact, and through that medium to ascertain the subject of the devise. * * * Here the question is not upon the devise, but upon the subject of it. Nothing is offered in explanation of the will, or in addition to it. The evidence is only to ascertain what is included in the description which the testator has given of the thing devised."

Such purpose may be shown by declarations or acts, and in this case we have both, and evidence of both is admissible for the same purpose. Clearly this would be so if the changes in his holdings of land had been made before the will was made. The in-

tention of the testator must be drawn from the language of the will viewed in the light which the situation and circumstances connected with the property may shed upon it. This was what the Court of Errors and Appeals did in *Carson v. Hickman*, 4 *Houst.* 328, when they looked outside the will, viz. to the plots and pretensions of the parties in an ejectment suit, and in the light shed on them by these matters *aliunde* interpreted the words of the will. The same was done by the Superior Court in the ejectment suit of *Knight v. Knight*, 5 *Boyce*, 570, 96 *Atl.* 32 (1915). There testimony was admitted and considered to show that at the time of, and for many years before, making the will the testator had used two adjoining tracts of land as one tract. This was to aid the court in determining from the will what the intention of the testator was at the time of making his will, there being an inconsistency between the general description given of the farm in the will and the recital in the will of the source of the testator's title thereto. The evidence above referred to was, therefore, admissible not to vary the will, but to show the purpose in making changes in the subject-matter devised, in order to ascertain from the will in the light of such evidence the testamentary intention.

The next consideration is as to the effect of such evidence. It was urged that the Delaware statute as to after-acquired property applied here. There does not seem to be any judicial construction of this statute by our own courts. At common law a will speaks as to real estate from its date, and could not pass property acquired after the date thereof. The reason of the rule was that a devise was considered as a grant, so that as one could not grant what he did not then own, neither could he devise it by will. In England, as in most of the states, including Delaware, this has been changed by statute. The English statute is very broad. By it a will must be construed to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention appears in the will. The English act seems to affect not only a general devise of all the testator's property, but to more particularly designated gifts. For instance, in the case of *In re Midland Railway Co.*, 34 *Beav.* 525, the devise was of a messuage wherein X. now resides, and between the time of making the will and his death the testator acquired

title to a garden which he attached to the messuage. It was considered that as by the statute the will spoke as if made at the testator's death, the after-acquired land passed under that devise. *Castle v. Fox, L. R.* 11 *Eq.* 542; *Stevens v. Bayley,* 5 *Ir. Law Rep.* (*N. S.*) 310, are other cases cited to the same effect in 1 *Jarman on Wills,* 607.

But the Delaware statute is not as broad as the English statute. By the Delaware statute land acquired after the making of the will shall pass thereby as if possessed at the making of the will, unless a contrary intention appears by the will. The effect given in this country to statutes substantially similar to that of Delaware is, that it makes no new rule of construction of specific devises and applies rather to general devises. *Briggs v. Briggs,* 69 *Iowa,* 617, 29 *N. W.* 632; *Pepper v. Pepper,* 115 *Ky.* 520, 74 *S. W.* 253; *Bourke v. Boone,* 94 *Md.* 472, 51 *Atl.* 396; *Hines v. Mercer,* 125 *N. C.* 71, 34 *S. E.* 106. In the last cited case the Court said that this general rule seems to be established:

"That where a testator uses general terms, as 'all of my estate,' or 'all of my lands or real estate,' then the devise will speak at the date of the death but, where he refers to a specific subject of gift, with sufficient particularity in the description of the specific subject of it, showing that an object in existence at the date of his will was intended, referring to the existing state of things, * * * then the operation of the general rule is excluded."

In some cases a contrary view was adopted. *Garrison v. Garrison,* 29 *N. J. Law,* 153; *Kimball v. Ellison,* 128 *Mass.* 41; *In re Midland Railway Co.,* 34 *Beav.* 525, 55 *Eng. Rep. Reprint,* 738.

The conclusion as to the effect of the statute as to after-acquired property is that it did not in this case make any new rule for construction of this will, because the gift in the will was specific and not general, and the statute applies to general devises. But, of course, it does not operate against passing after-acquired property under a specific devise. So that after all the ultimate question is as to the testamentary intention in the light of the facts existing at the death of the testator. Omitting immaterial words, the will says:

I devise to P. all that parcel of land, situate in Sussex County, where I now reside, containing 45 acres more or less.

Clearly the words as to residence apply not to Sussex County,

but to the tract of land. The word "now" is not a limitation, but an item of description or means of identification; or, in other words, the after-acquired property is not excluded from the devise by the use of the word "now." The cases of *In re Midland Railway Co., Hines v. Mercer, and Garrison v. Garrison*, cited above, are pertinent to sustain this view.

An important and convincing fact in the case is the use made of the after-acquired tract. Annexation of it to his land theretofore owned, and the use of it with and for the benefit of land theretofore owned, showed an unmistakable intention to make the thirty-three acre tract part of the tract on which the testator resided at the time his will was made and at the time of his death. As was held in *Perkins v. Jewett*, 11 *Allen* (*Mass.*) 9, unity of possession and actual occupation with land theretofore owned is regarded as decisive in such cases. This case is instructive. In 1825 the testator built a house and barn and inclosed the premises and resided there. In 1844 he bought an adjoining lot fronting on another street. There was evidence that he bought the latter lot for the purpose of having another passageway and for the benefit of his house lot and intended to annex it thereto; but he never occupied this lot as part of the homestead, or used it in connection therewith, and did not take down the fence, and for many years prior to his death rented the lot to tenants. By his will made in 1853 he devised to his wife "my dwelling house, outbuildings and house lot constituting my homestead estate." It was held that the lot did not pass as part of the homestead, because there was no annexation. *Kimball v. Ellison* and *In re Midland Railway Co., supra*, were like cases.

In the case of *In re Midland Railway Co.*, 34 *Beav.* 525, 55 *Eng. Reports Reprint,* 738, there was a devise of a messuage or dwelling house wherein X. "now resides, with the stables or appurtenances thereto belonging and therewith occupied." Between the date of his will and his death, the testator purchased a garden which he attached to the messuage. It was held, that the garden passed under the devise. The word "now" was descriptive of the messuage, the subject-matter of the devise, and was not intended to confine the extent of the devise. The testator devised the messuage and dwelling house, merely pointing out by the descrip-

tion what messuage he means. Consequently all the additions he makes to it, and which properly belong to the messuage as it stood at his death pass by the word "messuage," and these additions include the garden, the subject-matter in dispute.

In *Kimball v. Ellison*, 128 *Mass.* 41, a testator authorized his executor to sell any of his real estate not specifically devised, and devised his "mansion house and other buildings thereon, and the privileges thereto belonging," to A. for life and upon his death to B. After the date of the will he purchased land adjoining his mansion house estate, removed the buildings standing thereon, tore down the fences and made one garden with walks running through both estates, and erected a greenhouse on the purchased estate, which was used in connection with the mansion house; and the whole was so used and occupied at his death. By the law of Massachusetts after-acquired real estate passes, if such be the expressed intention of the testator, under a specific devise. The Court decided that the purchased estate passed by the specific devise of the mansion house estate. The Court found evidence in the will of intention that, if any land be added to the mansion estate, it should pass under the specific devise, saying:

"There are no words that limit or define the extent of the mansion house estate; the description is general, and what constituted the estate at the time of his death passed under this will to the demandant" [the devisee of the mansion house].

Cases may be found in which the courts construed otherwise the language of a particular will, and there are an infinite variety of cases, with varying circumstances. But the cases here cited justify the application of the words of the will to the state of the property at the testator's death, and warrant the giving of weight to the use made by him of the after-acquired property to show his final testamentary intention to include it as part of the tract on which he resided at the time the will was made. It is true that in the case of *Knight v. Knight*, 5 *Boyce*, 570, 96 *Atl.* 32, cited above, the court admitted evidence as to the state of the property of the testator to show his intention at the time of making his will; for in that case the change in the holdings occurred prior to the making of the will. But that case does not at all decide that evidence respecting changes of holding made after the making of

the will would not have been admitted to show testamentary intention at the time of death.

The conclusions are that evidence was admissible to show, and such evidence did show, that the testator acquired the thirty-three acre tract for the purpose of adding it to the tract of land on which he resided, and that he did in fact annex it thereto by effecting a unity of possession and actual occupation; so that at the time of his death the thirty-three acre tract was a part of the tract of land on which he then resided. Inasmuch as this will speaks as of the death of the testator on the question as to the identity of the subject-matter of the devise in question, the words "the tract of land on which I now reside" includes the thirty-three acre tract, and it therefore passed under the specific devise to Margaret E. Polite for life with remainder to Joseph M. Martin.

Let a decree be entered accordingly.