ANNIE H. HALL, Administratrix *de bonis non cum testamento annexo* of James P. Hoffecker, deceased,

*vs.*

SARAH CRANDALL, HELEN OAKLEY, JOSEPH V. HOFFECKER, WILFRED H. EATON, LUCIA EATON, HORACE H. SMITH, CLARA B. SMITH, GERTRUDE H. LEECH and ELIZABETH H. WALKER.

*Kent, June 13, 1941.*

A guardian *ad litem* was appointed for Lucia Eaton; but no answer was filed on her behalf.

Decrees *pro confesso* were entered against Clara B. Smith, Gertrude H. Leech, Joseph V. Hoffecker and Lucia Eaton, because of their failure to file answers.

*William M. Hope,* for complainant.

*Melvin Hopkins,* for respondents Sarah Crandall and others.

*William Poole,* for Elizabeth H. Walker.

THE CHANCELLOR: James P. Hoffecker bequeathed and devised the remainder of his estate, on the death or remarriage of his wife, the life beneficiary, to certain named nephews and nieces "share and share alike."

The seventh item of his will further provided:

"* * * and in case any of the said devisees shall be dead at the time of the final disposition of my estate, I hereby direct that the share of such as are dead shall be paid to their heirs, if they should have heirs, or to their widows, if they should have widows without issue."

Some years after James P. Hoffecker had executed his will, and, in fact, after his death, Emily Bell Huffington, one of the ultimate legatees named in that instrument, legally adopted a child, Carrie Harrison. The said Emily Bell Huffington died before the death of Mrs. Hoffecker without leaving any children or other descendants of her own blood. She was, however, survived by two sisters; by the three children of a deceased sister; by the child and grandchild of another deceased sister; and by the only son of a deceased brother. She was likewise survived by her adopted daughter, who subsequently married, and whose name is now Elizabeth H. Walker. All of these persons were living at the time of the death of Mrs. Hoffecker.

Under these facts, the questions specifically raised by the prayers of the complainant's bill, and on which she seeks instructions, are: (1) Whether the adopted daughter of Emily Bell Huffington can be said to be her heir within the meaning of the substitution provision of Mr. Hoffecker's will; or, if not, (2) whether her blood relatives, who are not lineal descendants, can be classed as her heirs. The last question presented is, therefore, a wholly different one from whether Emily Bell Huffington's adopted daughter could inherit from her, as her heir. Nor are we considering whether an adopted child of a testator would be included in a bequest to his heirs.

In construing a will, the intent of the testator is the fundamental question to be determined. *Maloney v. Johnson*, 24 *Del. Ch.* 77, 5 *A. 2d* 660; *In re Mitchell's Will*, 157 *Wis.* 327, 147 *N. W.* 332. In most cases, it must be ascertained from the language used; but in cases of real doubt, pertinent surrounding circumstances may also be consider-

ed. *Maloney v. Johnson, supra.* Independent of any such circumstances, when the substitution devise or bequest to the "heirs" of deceased devisees or legatees "if they should have heirs" is read in connection with the provision for the benefit of their widows "if they should have widows without issue," it is difficult to escape the conclusion that the word "heirs" is used in the sense of children, or, at least, of lineal descendants in some degree.

Whatever the primary meaning of the word "heirs" may ordinarily be (69 *C. J.* 208), when clearly a word of purchase it is frequently used in the sense of children. *Simes Future Interest*, § 418; 1 *Bouv. Law Dict., Rawles Third Rev., Heir, p.* 1432; 29 *C. J.* 299. Perhaps this is largely because the average layman is apt to regard it as having that meaning. *Simes Future Interest*, § 418.

Moreover, the word "issue" ordinarily means "descendants. All persons who have descended from a common ancester." 1 *Bouv. Law Dict., Rawles Third Rev., Issue, p.* 1686. The same author also adds that the *prima facie* meaning of the word "issue" is "heirs of the body." *Id.* See also *Farrell v. Faries, ante p.* 227, 17 *A.* 2d 17. Furthermore, it seems that "blood relationship has always been recognized by the common law as a potent factor in testacy." *Woodcock's Appeal,* 103 *Me.* 214, 68 *A.* 821, 822, 125 *Am. St. Rep.* 291; *Dulfon v. Keasbey,* 111 *N. J. Eq.* 223, 162 *A.* 102. It has, therefore, been aptly said that adoption is ordinarily an artificial and unexpected way for a person to acquire an heir. *Dulfon v. Keasbey, supra; In re McEwan's Estate,* 128 *N. J. Eq.* 140, 15 *A.* 2d 340.

Unexplained by any pertinent circumstances, it could hardly be said, therefore, that Mr. Hoffecker intended the word "heir" to include an adopted child of a legatee or devisee who had died before the time for the final distribution of his estate.

But the provisions of the adoption statute must also be considered in determining the real intended meaning of the

word "heirs" in the testator's will, and whether he intended an adopted child to participate in his bounty. *In re McEwan's Estate*, 128 *N. J. Eq.* 140, 15 *A.* 2d 340; 69 *C. J.* 200; 38 *Harv. Law Rev.* 977, citing *Kale's Fut. Int.*, 2d Ed., § 584. Both the act in force when Elizabeth H. Walker was adopted on July 8, 1909, (*Chap.* 612, *Vol.* 17, *Laws of Delaware*) and the act in force at the death of Mary L. Hoffecker on August 13, 1935 (*Chap.* 162, *Vol.* 38, *Laws of Delaware, as amended by Chapter* 212, *Vol.* 40, *Laws of Delaware*), contain broad provisions with respect to the relation between the adopting parent and the child and the legal rights between them. The first act provided that

" * * * all the duties, rights, privileges and obligations recognized by law between parent and child shall exist" between them "as if the said child * * * were the lawful and natural offspring or issue of the person or persons making the application * * *."

The subsequent act, which is perhaps the pertinent one (1 *C. J.* 1395, 1400; 2 *C. J. S., Adoption of Children,* § 55), makes little or no change in that relation. It provides that the adopted child shall be

" * * * to all intents and purposes, the child and heir at law of the person so adopting him or her * * * entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock * * *." 38 *Del. Laws, c.* 162.

But whatever the legal rights between Emily Bell Huffington and her adopted child might ordinarily be, the fact that the child was not adopted until many years after the execution of Mr. Hoffecker's will, and, in fact, not until after his death, would seem to be a controlling circumstance when considering his intent with respect to the persons who could ultimately share in his estate. *Woodcock's Appeal*, 103 *Me.* 214, 68 *A.* 821, 125 *Am. St. Rep.* 291; *Dulfon v. Keasbey*, 111 *N. J. Eq.* 223, 162 *A.* 102; *Simes Future Interest,* § 745; 1 *Amer. Jurisp.* 664.

In 1 *American Jurisprudence, supra,* the author in discussing this question aptly says:

"It is generally held that an adopted child is not entitled, on the death of the adoptive parent, to take property limited to the 'children,' 'issue,'

'heirs of the body' or 'right-heir' of such parent unless the intention that the child shall so take sufficiently appears."

No such intent appears on the face of Mr. Hoffecker's will or from the surrounding circumstances, when both the adoption statute and the time of adoption are considered. Moreover, as the substitution provision of the seventh item of the will used the word "heirs" in the sense of real lineal descendants of a deceased nephew or niece, no collateral relatives, such as surviving sisters or the descendants of any deceased brother or sister, come within the meaning of that word.

This disposes of the questions raised by the specific prayers of the bill, and argued by the solicitors for the various defendants, but it does not determine what persons are entitled to the fund in dispute. There is a prayer for such other relief as this court may deem proper; and if sufficient facts were alleged, and sufficient parties were before the court, the final disposition of that fund could, perhaps, be determined under that prayer.

The seventh item of Mr. Hoffecker's will devises and bequeaths the remainder of his estate, upon the death or remarriage of his wife, to certain named nephews and nieces "share and share alike"; but the clear inference is that in order for them to take they must survive Mrs. Hoffecker, the life beneficiary of the income therefrom. When the substitution provision does not apply, that part of the seventh item of the will is, doubtless controlling. But sufficient facts are not alleged to determine precisely what persons are entitled to the fund in dispute, nor are sufficient parties before the court. It appears that Emily Bell Huffington died before the death of Mr. Hoffecker, but it does not appear which, if any, of the other named legatees survived her.

A decree will be entered in accordance with this opinion.